Turley, J,
delivered the opinion of the court.
The question presented for consideration in this case arises out of the following state of facts. Calvin McClung, executor, at the October term, 1846, of the Circuit Court of Knox county, recovered judgment against Wm. B. French and others, upon which judgment an execution was issued tested of that term and made returnable to the ensuing February term of said court, 1847, which execution was at said term duly returned by the sheriff nulla bona. At the said February term, 1847, of said Circuit Court of Knox, the Union Bank, Planters’ Bank, and Bank of Tennessee, *92 recovered judgments against Wm. B. French and others, Upon these judgments executions were issued bearing test of said term and returnable to the June term, 1847, of said court; an alias execution was also issued upon the judgment in favor of Calvin McClung, administrator, which had been previously rendered as aforesaid, bearing test of said February term, 1847, and returnable to said June term, 1847. Upon these several executions, a certain sum of money was levied, not of sufficient amount to satisfy either of them, and the Circuit Judge directed it to be appropriated exclusively to the execution in favor of Calvin McClung, administrator, upon the legal proposition that inasmuch as his judgment was rendered at a term preceding those of the banks, and an execution had been issued thereon returnable to the term at which the bank judgments were rendered, said execution constituting a lien upon all the personal property of the defendant by relation to the date of the judgment, such lien was not lost by a return of nulla Iona on the execution, but the same was preserved and continued by the alias execution issued, and bearing test of the return day of the first, which is the same day on which the judgments in favor of the banks were in legal contemplation rendered; the consequence of which, was held' by the court to be, that the lien of McClung’s alias execution related to the date of his judgment, and the lien of the executions in favor of the banks, relating, also, to the date of their judgments, McClung’s execution was necessarily entitled to priority of satisfaction. To this judgment of the Circuit Judge, the banks excepted and removed the question by appeal to this court.
The question now presented for our consideration is from what time does the lien of an execution upon personal property commence? That this lien commences only from *93 tbe test of the execution is, in our opinion, as well settled a question as any in the State of Tennessee. In the case of Daley vs. Perry, and others—9 Yerger, 442 — it is said: “that a, fieri facias binds personal property from its test, has been so often holden in this State that the question is no longer debatable.” That this lien is commensurate with the test of the execution and never extends beyond it, is supported by every reported case upon the subject in the State, and they are numerous, and we consider that it is a useless consumption of time to refer to them for the purpose of examination. They are in the books of reports, and may be examined by those who may be desirous of so doing. The principle that this lien commences with the test of the execution and ends with its return of nulla bona, is understood by the courts in this State to be of common law origin, and, has been adjudged as such: it rests upon the ground that the execution and not the judgment creates the lien upon personal property, and the lien is operative from the time- the existence of the execution commences until it is functus officio, that is, from the date of its award in court to the day at which it is returnable. That such is the common law doctrine, is, we think, clearly'deihon-strable. *
“If a man recover against J. S. and sues out execution by fieri facias, the chatties which J. S. had at the time of the execution awarded, are liable to execution.- If, after the execution awarded against J. S., he dies, yet the sheriff may exécute the writ upon the goods in the hands of his executors or administrators, inasmuch as the goods were bound by the award of execution.” .
“On recovery in debt, the plaintiff had execution and the. defendant — after the test of the fi. ja. and before the sheriff had executed it — sold the goods bona fide and deliv *94 ered them to the buyers; adjudged that the sheriff might take them in execution in the hands of the buyers; because when such execution is made it shall have relation to the test of the writ, for by the award of the execution the goods were bound so that they may be taken in execution into whose hands soever they came.” Viner’s Abi\ title Execution, (Ad.) To what term it shall relate to chatties: and the cases there cited.
In the 2nd volume of Tidd’s Practice, page 998, it is laid down “that the writ of fieri facias should be tested in term time, on the day after the judgment is, or may be, supposed to have been given. And as the judgment relates in law to the first day of the term when it is signed, it seems that the fieri facias maybe tested on any day in that term, and it should be made returnable in term time.”
“At common law the fieri facias had relation to its test and bound the goods of the defendant from that time, so that if he had afterwards sold the goods though bona fide and for a valuable consideration, they were still liable to be taken in execution into whose hands soever they came.” Same book, page 999,
These authorities abundantly establish that at common law an execution is a lien from its test or the time from which it is awarded, which are synonymous terms. In the case of Daley vs. Perry and others—9 Yerger, 442—it is held by the court that to award an execution is a judicial act. In England, when an execution is issued, it is by order of the court; here, it is the judgment which awards the execution. The awarding an execution being a judicial act done in open court, relates to the first day of the term at which it is made; and therefore, an execution issued in pursuance thereof, is a lien at common law upon personal property from, the first day of the term. Here, *95 the judgment awards the execution, which, if issued from the term at which the judgment was rendered, bears test from the first day of that term and is a lien on personal property from that term. So that both in England and in this State by the principles of the common law an execution issued from the term of a court at which the judgment has been rendered, binds personal property from the first day of that term, because in contemplation of law the judgment was rendered on that day, and the execution which is brought into existence by the judgment operates by relation from that day.
We have seen that in England the fieri facias must be tested in term time and'made returnable in term time. 2 Tidd’s Practice, 998. By our statute law all executions bear test from the first Monday of the term from which they purport to have been issued and are made returnable to the first Monday of the succeeding term. Between, then, these two stated periods, viz, the date of the test and the date of the return, they are a lien, and operative by the principles of the common law, and may seize upon any personal property belonging to the defendant, wherever it may be found, even though he may have sold it in the interim to an innocent purchaser for a valuable consideration; but after the return day has passed they we functus officio, unless they have been levied, and can upon no legal principle be more efficient in keeping a lien upon the pro-' perty of the defendant than they could be in securing it. An execution which cannot seize property, surely cannot encumber it with a lien. When an execution has been returned nulla bona an alias may be issued; from what period of time does this alias bind the personal property of the debtor upon common law principles? From its test, also, which both in England and this State, by the common *96 law, is from the date to which the first is returnable, provided it follows in succession. “In all continued writs, the alias or testatum must be tested the day the former was returnable.” Tidd’s Practice, 1023. In the case of Daley vs. Perry and others, (9 Yerger,) heretofore referred to, it is further said, “If an execution is returned not satisfied, the judgment awards an alias which bears test from the first day of the term, that is to say, of the term to which the first was returnable, and is a lien from that .term on personal property.” Then, inasmuch as a consecutive execution bears test from the day on which the one which preceded it was returnable, upon principle and authority it only creates a lien upon the personal property of the defendant, from that date. Then we hold that an alias execution bearing test from the return day of the first, does not operate as a lien upon personal property by relation from the date of the judgment, but only from the return day of the first execution.
It is not to be' denied, but that there are cases adjudged in the State of North Carolina, controverting this position. They have been pressed upon this court as authority. That we have the highest respect for the decisions of the enlightened Supreme Court of that State we have often given evidence. But we do not comprehend the grounds upon which the decisions now referred to are made to rest. They are in direct conflict with our own upon the same subject, and we cannot yield our judgment to them. The consequences would, in our opinion, be productive of much mischief; to hold that a, continuity of executions without levy, could keep up a lien upon the personal property of the defendant, from the date of the judgment for an unlimited period of time, would produce, as we are well satisfied, great confusion in hindering and delaying other creditors, *97 and in embarrassing the transfer of personal property from one person to another. Even the limited lien given by the common law from the test of the execution was at an early period considered in England to be productive of mischief, and it is abolished by the statute of 29th Car. 2nd, chap. 3, sec. 16, which provides that “no writ of execution shall bind the property of goods but from the time of its delivery to the sheriff or coroner, who upon receipt thereof, shall endorse upon the back thereof, the day of the month and year when they received it.” To follow, then, North Carolina’s decision, would be to create liens upon the personal property of debtors by executions to an extent never dreamed of by the common law, as understood in this State, and as we believe, and have endeavored to show, in England. The cases are anomalous, and we are forced to repudiate them. We, therefore, think that- the Circuit Judge erred in directing the whole of the funds obtained by the sheriff in the cases under consideration, to be appropriated to the satisfaction of McClung’s execution, to the exclusion of those of the banks, and direct a pro rata distribution of the same among all the executions bearing equal test and having thereby equal liens upon the personal property of the defendant.